# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ANDRELL WESLEY,

                    Petitioner,

v.                                                    Case No. 24-CV-1033-JPS

UNITED STATES OF AMERICA,

                    Respondent.                      **ORDER**

---

## 1.    INTRODUCTION

On August 14, 2024, Petitioner Andrell Wesley ("Petitioner") moved to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. ECF No. 1. The Court screened Petitioner's motion in accordance with Rule 4 of the Rules Governing § 2255 Proceedings, concluding that he could only proceed on the ground that he received ineffective assistance of counsel from three of the attorneys who represented him at various time during his criminal case and on the ground that newly decided caselaw from the Supreme Court applies to his sentence and changes the range. ECF No. 2 at 4–6; ECF No. 3. The Government thereafter answered Petitioner's motion, ECF No. 5; Petitioner filed a brief in support of his motion, ECF No. 7; and the Government responded,[1] ECF No. 10. Petitioner did not timely reply, so this motion is now ripe for review.

---

[1] One day before filing its response, the Government moved for an extension of time in which to respond and for a finding of waiver of attorney-client privilege so that the Government could publicly file an affidavit from Attorney Erickson. ECF No. 8. Because the Government timely filed its response the next day, the Court will deny this portion of the motion as moot.

The Court will now address the merits of Petitioner's § 2255 motion. For the reasons set forth herein, the motion will be denied, and this case will be dismissed with prejudice.

## 2. BACKGROUND

Petitioner's § 2255 motion arises from his criminal proceedings before this Court in *United States v. Andrell Wesley*, 21-CR-51-3-JPS (E.D. Wis.).[2] In March 2021, Petitioner was indicted on five counts—Conspiracy to Distribute and Possess with Intent to Distribute Heroin and 40 Grams or More of Fentanyl (Count One), Conspiracy to Commit an Offense Against United States (Count Two), Possession with Intent to Distribute Fentanyl (Count Eight), Possession of a Machinegun in Furtherance of a Drug Trafficking Offense (Count Nine), and Being a Felon in Possession of a Firearm (Count Eleven). CR-ECF No. 21; CR-ECF No. 187 at 4.

---

The Court will grant the portion of the Government's motion that seeks a finding that Petitioner, by bringing his § 2255 motion, waived his attorney-client privilege related to Attorney Erickson's representation in the underlying criminal matter. The generally accepted rule is that a litigant who challenges the sufficiency of his attorney's services impliedly waives the attorney-client privilege as to those matters. *Garcia v. Zenith Elecs. Corp.*, 58 F.3d 1171, 1175 n. 1 (7th Cir. 1995) ("We note that the attorney-client privilege is generally waived when the client asserts claims or defenses that put his attorney's advice at issue in the litigation." (citing *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851 (3d Cir. 1994)). "Implied waiver of the privilege can be found when a petitioner asserts ineffective assistance of counsel in a habeas case." *Knope v. United States*, No. 13-C-0043, 2015 WL 2185990, at *2 (E.D. Wis. May 11, 2015) ("It has long been the rule in the federal courts that, where a habeas petitioner raises a claim of ineffective assistance of counsel, he waives the attorney-client privilege as to all communications with his allegedly ineffective lawyer." (quoting *Bittaker v. Woodford*, 331 F.3d 715, 716 (9th Cir. 2003) and citing *United States v. Pinson*, 584 F.3d 972, 978 (10th Cir. 2009) and *Jenkins v. United States*, No. 09-CV-713, 2010 WL 145850, at *1, *2 (E.D. Wis. Jan. 8, 2010))).

[2]Docket references thereto will be cited as CR-ECF.

The court appointed Attorney Jeffrey Jensen ("Attorney Jensen") to represent Petitioner a few days after he was indicted. CR-ECF No. 28. The pretrial motions deadline was set for July 1, 2021, CR-ECF No. 41, and that deadline passed without Attorney Jensen filing any pre-trial motions on Petitioner's behalf. Petitioner's co-defendants requested and were granted multiple extensions of time to file pretrial motions, but Petitioner did not join in any of these motions. *See* CR-ECF Nos. 45, 47, 48, 57, 58, and 59. In August 2022, Attorney Jensen moved to withdraw from representing Petitioner, noting that Petitioner had "terminated" Attorney Jensen and directed him to withdraw. CR-ECF No. 121. Attorney Jensen's motion to withdraw was granted. CR-ECF No. 137.

Attorney Russell Jones ("Attorney Jones") was then appointed to represent Petitioner. CR-ECF Nos. 139 and 143. Attorney Jones moved to withdraw in October 2022, not two months after appearing for Petitioner. CR-ECF No. 147. In support of Attorney Jones's motion to withdraw he stated that his communication with Petitioner had "deteriorated"; more specifically Petitioner did "not agree on how to progress on the case and [Attorney Jones would] not breach his ethics." *Id.* Attorney Jones's motion to withdraw was granted. CR-ECF No. 148.

Petitioner's third attorney, Thomas Hayes ("Attorney Hayes"), was appointed shortly thereafter, in November 2022. CR-ECF No. 149. Despite having counsel, Petitioner filed a pro se motion to suppress after this, CR-ECF No. 150, which was dismissed because the deadline for pretrial motions had passed nearly a year and a half earlier and because Petitioner was represented by counsel. CR-ECF No. 151. In January 2023, Attorney Hayes moved to withdraw, stating that he was doing so at the request of Petitioner, who had indicated that his family was going to engage a private

attorney for Petitioner. CR-ECF Nos. 155, 155-1. The court denied Attorney Hayes's motion, noting that he could move again to withdraw once a successor counsel was hired. CR-ECF No. 157. Petitioner moved in February 2023 to remove Attorney Hayes as his counsel and appoint counsel out of Federal Defender Services, asserting that Attorney Hayes refused to file motions on Petitioner's behalf, including a motion to suppress that Attorney Hayes believed to be "without merit." CR-ECF No. 158. The court granted Petitioner's motion and ordered Federal Defender Services to appoint new counsel for Petitioner. CR-ECF No. 159. Before Petitioner was appointed new counsel, he filed a pro se motion for bond. CR-ECF No. 160.

In March 2023, the court appointed Petitioner's fourth attorney, Thomas Erickson ("Attorney Erickson"). CR-ECF No. 161. Attorney Erickson adopted and litigated Petitioner's pro se motion for bond. CR-ECF No. 163. In April 2023, Petitioner signed a plea agreement agreeing to plead guilty to Counts One and Nine of the Indictment, with a total mandatory minimum term of ten years in prison. CR-ECF No. 175. Petitioner was formally adjudicated guilty that same month. CR-ECF Nos. 176, 177, 179.

Prior to sentencing, Attorney Erickson filed a sentencing memorandum on Petitioner's behalf arguing that he should receive a sentence of 120 months and that it should be a lower sentence than his co-defendant Jovan Newman's ("Newman") sentence, because Newman had played a leadership role. CR-ECF No. 185 at 4. Attorney Erickson also argued that a downward departure from the sentencing guidelines was appropriate because Petitioner's criminal history category was "arguably over-inflated" since his "record [wa]s largely one of misdemeanors with little violence or gun activity." *Id.* at 5–6.

On July 28, 2023, the Court sentenced Petitioner to a total term of imprisonment of 144 months. CR-ECF No. 191 at 2. Petitioner did not appeal his conviction and sentence. On May 22, 2024, Petitioner filed a letter "requesting a copy of [his] discovery so [he] can work on his appeal," and explaining that he was "sentenced July 28[, 2023] and still [hadn't] heard anything." CR-ECF No. 210. The Court issued an order responding to the letter, in which it explained to Petitioner that he did not file a direct appeal and that the time to do so had expired. CR-ECF No. 211 at 1 (citing Fed. R. App. 4(b)(1)(A)(i)). The Court also noted that "to the extent that [Petitioner] instructed his attorney at sentencing to file an appeal on his behalf but his attorney did not do so, [Petitioner] is still able to timely raise that claim collaterally under 28 U.S.C. § 2255." *Id.* (citing *Castellanos v. United States*, 26 F.3d 717 (7th Cir. 1994)). Petitioner then moved to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. ECF No. 1.

3.      **LEGAL STANDARD**

A person serving a sentence imposed by a federal court who is

claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). "Relief under § 2255 is available 'only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice.'" *United States v. Coleman*, 763 F.3d 706, 708 (7th Cir. 2014) (quoting *Blake v. United States*, 723 F.3d 870, 878–79 (7th Cir. 2013)).

"[W]here the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief," the Court need not hold an evidentiary hearing. *Torzala v. United States*, 545 F.3d 517, 525 (7th Cir. 2008) (quoting *Cooper v. United States*, 378 F.3d 638, 641–42 (7th Cir. 2004)). A hearing is also not required "if the petitioner makes allegations that are 'vague, conclusory, or palpably incredible,' rather than 'detailed and specific.'" *Gaylord v. United States*, 829 F.3d 500, 506–07 (7th Cir. 2016) (quoting *Bruce v. United States*, 256 F.3d 592, 597 (7th Cir. 2001)).

### 4.   ANALYSIS

As noted, Petitioner proceeds on two grounds for relief: first, that Attorneys Thomas, Hayes, and Jensen were ineffective in their representation; and second, that *Garland v. Cargill*, 602 U.S. 406 (2024) makes it clear that he was unconstitutionally sentenced. The Court will discuss each separately below.

#### 4.1   Ineffective Assistance of Counsel

Courts apply the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984) to evaluate the effectiveness of counsel. *Makiel v. Butler*, 782 F.3d 882, 897 (7th Cir. 2015). "The Sixth Amendment guarantees a defendant the effective assistance of counsel at 'critical stages of a criminal proceeding,' including when he enters a guilty plea" and at sentencing. *Lee v. United States*, 582 U.S. 357, 363 (2017) (quoting *Lafler v. Cooper*, 566 U.S. 156, 165 (2012) and citing *Hill v. Lockhart*, 474 U.S. 52, 58 (1985)); *Eddmonds v. Peters*, 93 F.3d 1307, 1319 (7th Cir. 1996) (citing *Stewart v. Gramley*, 74 F.3d 132, 135 (7th Cir. 1996) and *Strickland*, 466 U.S. at 690–91).

"A party asserting ineffective assistance of counsel bears the burden of establishing two elements: (1) that his trial counsel's performance fell below objective standards for reasonably effective representation, and

(2) that counsel's deficiency prejudiced the defense." *Blake*, 723 F.3d at 879 (citing *Strickland*, 466 U.S. at 687–88; *United States v. Jones*, 635 F.3d 909, 915 (7th Cir. 2011); and *Wyatt v. United States*, 574 F.3d 455, 457 (7th Cir. 2009)). "[A] court does not need to address the *Strickland* prongs in any particular order. If one prong is found to be insufficient, the court need not address the other prong." *Ruhl v. Hardy*, 743 F.3d 1083, 1092 (7th Cir. 2014) (citing *Strickland*, 466 U.S. at 697).

With respect to the first prong, the *Strickland* standard is "highly deferential to counsel, presuming reasonable judgment and declining to second guess strategic choices." *United States v. Shukri*, 207 F.3d 412, 418 (7th Cir. 2000) (quoting *United States v. Williams*, 106 F.3d 1362, 1367 (7th Cir. 1997)) (internal quotation marks omitted). There is a "strong presumption" that counsel's decisions constitute reasonable litigation strategy. *Strickland*, 466 U.S. at 689 (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also United States v. Trevino*, 60 F.3d 333, 338 (7th Cir. 1995) ("[B]ecause counsel is presumed effective, a party bears a heavy burden in making out a winning claim based on ineffective assistance of counsel."). "Counsel's work must be assessed as a whole; it is the overall deficient performance, rather than a specific failing, that constitutes the ground for relief." *Peoples v. United States*, 403 F.3d 844, 848 (7th Cir. 2005) (citing *Bell v. Cone*, 535 U.S. 685, 697 (2002); *Strickland*, 466 U.S. at 690; and *Holman v. Gilmore*, 126 F.3d 876, 881–84 (7th Cir. 1997)).

Meanwhile, the prejudice prong is not met merely by a showing that "counsel's errors might have had an effect on the outcome." *Ruhl*, 743 F.3d at 1091. Instead, there must be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 1091–92 (quoting *Strickland*, 466 U.S. at 694).

Petitioner argues that three different lawyers who represented him during the pretrial phase of his criminal case and at sentencing were constitutionally ineffective. ECF No. 1 at 6–7. He asserts that Attorneys Hayes and Jensen failed to file pretrial motions to suppress evidence and attack informants' credibility and reliability. *Id.* at 7. He contends that Attorney Erickson gave him bad advice regarding plea negotiations and signing a plea agreement. *Id.* He further asserts that Attorney Erickson did not object to Petitioner's criminal history score and told Petitioner that he could pursue a motion to reduce his sentence after sentencing instead of an appeal. *Id.* at 7 ("[Attorney Erickson] told me I can't file an appeal and pursue a [motion to reduce my sentence] at the same time."). The Court will discuss these three allegations separately.

### 4.1.1 Attorneys Hayes and Jensen's Failure to File Pretrial Motions

Petitioner contends that he received ineffective assistance of counsel from both Attorneys Hayes and Jensen due to their "fail[ure] to file motions to suppress evidence" and to attack the "informants['] credibility and reliability." ECF No. 1 at 7. He argues that "[i]f either attorney would[] [have] . . . filed [such a] motion, the evidence would[] [have] been suppressed." ECF No. 7 at 1.

A defense counsel's failure or refusal to file a motion to suppress constitutes ineffective assistance of counsel under *Strickland* on if "there was both a reasonable probability that he would have prevailed on the motion to suppress and a reasonable probability that, if [the evidence at issue was] suppressed, [the defendant] would have been acquitted." *Bynum v. Lemmon*, 560 F.3d 678, 685 (7th Cir. 2009) (citing *Strickland*, 466 U.S. at 694 and *Richardson v. Briley*, 401 F.3d 794, 803 (7th Cir. 2005)).

The Government argues that Petitioner has failed to meet his burden in establishing ineffective assistance of counsel because he has not established that any motion to suppress Attorneys Hayes or Jensen could have filed had merit. ECF No. 10 at 8–15. For the reasons explained below, the Court agrees. This means that Petitioner has failed to show that his attorneys' failure to file a motion to suppress prejudiced him, and thus his ineffective assistance of counsel claim as to Attorneys Hayes and Jensen fails.

At the outset, the Court notes that at least two of Petitioner's attorneys seemed to agree that any motion to suppress in Petitioner's case was meritless. *See* ECF No. 10 at 8 (citing CR-ECF Nos. 147 and 158). The Court presumes that these strategic choices were reasonable, *see Strickland*, 466 U.S. at 689 (citing *Michel*, 350 U.S. at 101), but it will nevertheless examine the potential merit of a motion to suppress in Petitioner's case to determine whether the failure to file one could have prejudiced him.

Petitioner's pro se motion to suppress in the underlying case details his position on the search warrant he wished to challenge. CR-ECF No. 150. In that motion, Petitioner argues that the affidavit supporting the search warrant did not establish probable cause because (1) the affidavit did not demonstrate that "there would be in any precise location, any evidence of a crime"; (2) the affiant, Police Officer Michael Lopez ("Officer Lopez"), did not corroborate information provided from the confidential informant whose information was not sufficiently reliable, and (3) there was not sufficient cause for a no-knock warrant. *Id.* Petitioner also requested an evidentiary hearing (a *Franks* hearing, per *Franks v. Delaware*, 438 U.S. 154 (1978)). *Id.* at 15 (citing *United States v. Ledesma*, 499 F.2d 36, 39 (9th Cir. 1974)).

Upon review of the record, it is clear that any motion to suppress would have been meritless. A reviewing court must "defer to the warrant-issuing judge's initial determination of probable cause if 'there is substantial evidence in the record supporting the judge's decision.'" *United States v. Koerth*, 312 F.3d 862, 865 (7th Cir. 2002) (quoting *United States v. Lloyd*, 71 F.3d 1256, 1262 (7th Cir. 1995)). That was certainly the case here.

Probable cause exists to support a search warrant when, "based on a totality of the circumstances, the affidavit sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime." *United States v. Peck*, 317 F.3d 754, 756 (7th Cir. 2003) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983) and *United States v. Jones*, 208 F.3d 603, 608 (7th Cir. 2000)). "[P]robable cause is a low bar that can be cleared without a *prima facie* showing of criminal activity." *United States v. Rees*, 957 F.3d 761, 769 (7th Cir. 2020) (citing *Gates*, 462 U.S. at 235, 243 n.13). When an informant's tip serves as the basis for a warrant, the probable cause analysis involves five factors: "the level of detail, the extent of firsthand observation, the degree of corroboration, the time between the events reported and the warrant application, and whether the informant appeared or testified before the magistrate." *United States v. Glover*, 755 F.3d 811, 816 (7th Cir. 2014) (citing *United States v. Johnson*, 655 F.3d 594, 600 (7th Cir. 2011)). Further, "no one factor necessarily dooms a search warrant." *Id.* (quoting *Johnson*, 655 F.3d at 600). In this case, all of the factors clearly support a finding of probable cause except for the last one, which does not doom the finding due to the strength of the other factors.

In the affidavit supporting the warrant application, Officer Lopez described information provided by a confidential information who identified Petitioner and Newman and saw them in the apartment at issue

with drugs and guns. *See* ECF No. 10-1. Officer Lopez was forthcoming about the fact that his informant had provided information in hopes of positive consideration related to an open felony case against them, and that the informant had serious prior felony convictions. *Id.* at 5. In his affidavit, Officer Lopez relayed how the informant stated that Petitioner and Newman used the apartment to store firearms and manufacture heroin. *Id.* at 7. The informant described seeing Petitioner and Newman in the apartment with firearms and heroin on multiple previous occasions and as recently as the same week Officer Lopez applied for the warrant. *Id*. at 6–7. The informant described the location and appearance of the apartment building, and how to enter the apartment, including a third party's name that would appear on the electronic access device. *Id.* at 8. This is enough for a "reasonably prudent person" to believe that searching the apartment identified by the confidential information would "uncover evidence of a crime." *Peck*, 317 F.3d at 756 (citing *Gates*, 462 U.S. at 238 and *Jones*, 208 F.3d at 608).

Petitioner's pro se motion claims that the affidavit did not establish probable cause because the confidential information did not provide information about where the firearms and heroin would be located within the apartment. CR-ECF No. 150 at 5. This argument has no merit because a warrant is sufficiently specific under the Fourth Amendment when it specifies that evidence will be found in a particular dwelling unit; it need not specify where within that unit the evidence will be located. *See United States v. Hinton*, 219 F.2d 324, 326 (7th Cir. 1955) ("Federal courts have consistently held that the Fourth Amendment's requirement that a specific

'place' be described when applied to dwellings refers to a single living unit . . . .").[3]

Plaintiff next states that probable cause was lacking because Officer Lopez did not sufficiently corroborate the confidential informant's information. It is true that "[p]olice corroboration of an informant's tip is valuable in determining the reliability of the tip and, ultimately, in establishing probable cause." *United States v. Alexander*, 573 F.3d 465, 476 (7th Cir. 2009) (citing *United States v. Wiley*, 475 F.3d 908, 916 (7th Cir. 2007) and *United States v. Olson*, 408 F.3d 366, 372 (7th Cir. 2005)). But Plaintiff's own pro se motion recognized the myriad pieces of information that Officer Lopez *did* independently corroborate. First Officer Lopez visited the address provided by the informant and confirmed that the building looked as described; he then confirmed the third party's name on the electronic access device to enter the apartment. ECF No. 10-1 at 8. He went further yet, obtaining rental documents from the building owner that confirmed both the name of that third-party as the renter for the relevant unit and that her

_____

[3]Petitioner also takes issue with certain information not included in the affidavit, arguing that the affidavit did not establish probable cause because it did not personally identify Wesley with details such as his phone number, birth date, vehicle description, or how long he was associated with the residence. CR-ECF No. 150 at 5. This information was not necessary because the affidavit did not need to link any potential evidence of crime to Wesley, specifically, but rather only to the apartment it identified. *Zurcher v. Stanford Daily*, 436 U.S. 547, 555 (1978) ("Search warrants are not directed at persons; they authorize the search of 'place[s]' and the seizure of 'things,' and as a constitutional matter they need not even name the person from whom the things will be seized." (quoting *United States v. Kahn*, 415 U.S. 143, 155 n.15 (1974))); *United States v. Zamudio*, 909 F.3d 172, 176 (7th Cir. 2018) ("[A]n affidavit submitted in support of a warrant application 'need only contain facts that, given the nature of the evidence sought and the crime alleged, allow for a reasonable inference that there is a fair probability that evidence will be found in a particular place.'" (quoting *United States v. Aljabari*, 626 F.3d 940, 944 (7th Cir. 2010)))).

emergency contact was similar to an alias of Newman. *Id.* at 9. Officer Lopez also corroborated his informant's information by speaking with an employee of the apartment building, who shared that he had received complaints about loud music and the smell of burning marijuana coming from the apartment in question, that he had observed two black males going toward the apartment (later identifying those males from photos of Petitioner and Newman), and that he had seen packages for Newman being sent to the apartment. *Id.* This was not a small amount of corroboration by Officer Lopez; in fact, it is difficult to imagine what more he could have corroborated without the warrant to search the premises itself. Accordingly, Petitioner's issue with corroboration is baseless.

Petitioner's pro se motion to suppress also argued that there were not exigent circumstances present such that a no-knock warrant was appropriate. CR-ECF No. 150 at 12–13. Like his others, this argument fails. Officer Lopez confirmed that both Petitioner and Newman were felons and that Newman had an open case in Milwaukee Couty Circuit Court for possession of a firearm as a felon. ECF No. 10-1 at 11. This, together with the informant's tip that Petitioner and Newman had firearms in the apartment, created a potential risk of danger to any officers such that a no-knock warrant was appropriate. *See Wilson v. Arkansas*, 514 U.S. 927, 936 (1995) ("[T]he presumption in favor of announcement . . . yield[s] under circumstances presenting a threat of physical violence." (citing *Read v. Case*, 4 Conn. 166, 170 (1822) and *Mahomed v. The Queen*, 4 Moore 239, 247, 13 Eng. Rep. 293, 296 (P.C. 1943))); *Richards v. Wisconsin*, 520 U.S. 385, 394 (1997) ("In order to justify a 'no-knock' entry, the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous . . . ."); ECF No. 10-1 at 11

(Officer Lopez requesting a no-knock warrant because "the presence of firearms in the residence presents a significant risk to the safety of the officers executing the search warrant and . . . a no-knock warrant will decrease the amount of time for anyone in the residence to arm themselves and thus become a threat to officer safety"). Further, as the Government points out, "a failure to knock and announce is not a basis to suppress evidence obtained from an otherwise valid search warrant." ECF No. 10 at 13 (citing *Hudson v. Michigan*, 547 U.S. 586, 593–94 (2006)).

Even if probable cause did not exist for the warrant issued in Petitioner's criminal case, the Court agrees with the Government that the good faith exception articulated in *United States v. Leon*, 468 U.S. 897 (1984) applies here. ECF No. 10 at 14–15. Under *Leon*, even if a court finds that a warrant was deficient, the evidence obtained pursuant to that warrant should not be suppressed if the executing law enforcement officer could have "reasonably believed that the facts set forth in the affidavit were sufficient to support a magistrate's finding of probable cause." *Koerth*, 312 F.3d at 866 (citing *Leon*, 468 U.S. at 920–24; *United States v. Danhauer*, 229 F.3d 1002, 1005–07 (10th Cir. 2000); and *United States v. Dahlman*, 13 F.3d 1391, 1397–98 (10th Cir. 1993)); *see also Leon*, 468 U.S. at 918–19. A law enforcement officer's "decision to seek a warrant is *prima facie* evidence that he acted in good faith." *Peck*, 317 F.3d at 757 (citing *Leon*, 468 U.S. at 921 n.21 and *Koerth*, 312 F.3d at 868). To rebut this presumption of good faith reliance, a defendant must demonstrate that: (1) "the issuing judge abandoned his role as a neutral and detached arbiter"; (2) "the officer[] w[as] dishonest or reckless in preparing the supporting affidavit"; or (3) "the affidavit was so lacking in probable cause that no [reasonable] officer could have relied on it." *United States v. Mykytiuk*, 402 F.3d 773, 777

(7th Cir. 2004) (citing *Leon*, 468 U.S. at 923 and *Peck*, 317 F.3d at 757). "The burden to show unreasonable reliance on a warrant is heavy by design." *United States v. Matthews*, 12 F.4th 647, 653 (7th Cir. 2021) (citing *Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012)). Because the Court has found here that the affidavit supported a probable cause finding, Petitioner may only rebut the good faith presumption by showing that the magistrate "abandoned his role as a neutral and detached arbiter," or by demonstrating that Officer Lopez was "dishonest or reckless" in preparing the affidavit. *Mykytiuk*, 402 F.3d at 777 (citations omitted). He has not argued either, and the Court finds no basis for either in the record.

The Court will lastly address that Petitioner's pro se request for a *Franks* hearing. CR-ECF No. 150 at 15. In order to obtain a *Franks* hearing "to explore the validity of a search warrant affidavit, a defendant must make a 'substantial preliminary showing' that: (1) the affidavit contained a material false statement; (2) the affidavit made the false statement intentionally, or with reckless disregard for the truth; and (3) the false statement was necessary to support the finding of probable cause." *United States v. Maro*, 272 F.3d 817, 821 (7th Cir. 2001) (quoting *Franks*, 438 U.S. at 155–56). Neither Petitioner's pro se motion to suppress nor his § 2255 motion or brief in support thereof make a preliminary showing that Officer Lopez's affidavit contained any material false statement. *See generally* CR-ECF No. 150; ECF No. 1; ECF No. 7. The Court thus cannot find that Petitioner was prejudiced by his attorneys' failure to file a motion for a *Franks* hearing, because nothing suggests that such a motion would have been successful.

Petitioner has not demonstrated "a reasonable probability that . . . the result of the proceeding would have been different" had any of his first

three attorneys filed a pretrial motion to suppress. *Ruhl,* 743 F.3d at 1092 (quoting *Strickland,* 466 U.S. at 694). He thus fails the prejudice prong of the *Strickland* test and is entitled to no relief. *Id.* ("[A] court does not need to address the *Strickland* prongs in any particular order. If one prong is found to be insufficient, the court need not address the other prong." (citing *Strickland,* 466 U.S. at 697)). Because the record in this case conclusively shows that Petitioner is not entitled to relief, the Court need not hold an evidentiary hearing. *Torzala,* 545 F.3d at 525 (citing *Cooper,* 378 F.3d at 641–42).

### 4.1.2 Attorney Erickson's Advice Regarding the Plea Agreement

Petitioner claims that Attorney Erickson provided ineffective assistance during the plea negotiation stage. Specifically, he claims that Attorney Erickson's "deficient p[er]formance deprived [him] of a fair tr[ia]l and led to a rushed and premature plea agreement." ECF No. 7 at 1. He alleges that Attorney Erickson was deficient because he advised Petitioner that if Petitioner signed the plea agreement, he "wouldn't get more time than . . . Newman" and that he would not receive more than ten years' incarceration as a sentence. ECF No. 1 at 6–7. Attorney Erickson submitted an affidavit in response to Petitioner's habeas motion, wherein he outright denies advising Petitioner in this way. ECF No. 10-3. Specifically, Attorney Erickson avers that he "would have made it clear [to Petitioner] that the sentence [in his case] was up to the [C]ourt and that [Attorney Erickson] could make no guarantees about the length of [Petitioner's] sentence." *Id.* at 3. He further states that it is "absurd" to suggest that he told Petitioner that he would not be sentenced to more time than Newman, expounding that

Case 2:24-cv-01033-JPS    Filed 08/29/25    Page 16 of 24    Document 12

"[a]n attorney is in no position to guarantee what sentence a client will get."
*Id.*

Although Petitioner and Attorney Erickson make competing allegations about Attorney Erickson's representation in the sentencing phase, the Court finds Petitioner's version of events to be "palpably incredible," which would make an evidentiary hearing unnecessary even if Petitioner's allegations would otherwise form the basis for habeas relief. *Gaylord*, 829 F.3d at 506–07 (quoting *Bruce*, 256 F.3d at 597). First, while Petitioner asserts that Attorney Erickson's representation led to a "rushed and premature plea agreement," ECF No. 7 at 1, Attorney Erickson's affidavit correctly notes that it was the Court in Petitioner's criminal case that had set a deadline for plea agreements, and thus the timeline for plea negotiations was largely driven by the Court-imposed deadline rather than Attorney Erickson's strategic decisions. *See* ECF No. 10-3 at 3 (noting that Attorney Erickson was appointed March 1, 2023); *see also* CR-ECF No. 169 (amended trial scheduling order setting the plea agreement deadline for acceptance of responsibility credit as May 2, 2023); CR-ECF No. 175 (Petitioner's plea agreement, filed April 17, 2023). Second, Petitioner's claim that Attorney Erickson advised him that if he "t[ook] a plea, [Petitioner] wouldn't receive more than 10 years," ECF No. 1 at 7, is not credible because ten years was the mere statutory *minimum* that Petitioner was required to receive under the charges to which he pled. CR-ECF No. 175 at 2, 4–5, 7; *see* ECF No. 10-3 at 3 (noting that Wesley was aware during his calls with Attorney Erickson that "the sentence was up to the [Court,] not [Attorney Erickson,] and that [Attorney Erickson] could not and did not promise [Petitioner] anything in regard to what his sentence would be."). In light of these claims by Petitioner, the Court also finds incredible Petitioner's claim

that Attorney Erickson told him he would not receive a higher sentence than Newman. ECF No. 1 at 7. Just as with the overall length of Petitioner's sentence, defense counsel is not in any position to guarantee what a Court will ultimately determine is appropriate and therefore the Court does not believe it credible that Attorney Erickson would have guaranteed an equal or lesser sentence for Petitioner than Newman. *See* ECF No. 10-3 at 4. Here, even if the Court credited Petitioner's version of events as possible, an evidentiary hearing is not required because, as further explained in this section, Petitioner's allegations do not form the basis for habeas relief.

Petitioner's ineffective assistance claim as to the plea negotiations fails at the first prong, because he cannot show that Attorney Erickson was deficient in his representation. The Court presumes that Attorney Erickson exercised "reasonable judgment" and will not second guess his strategic choices. *Shukri*, 207 F.3d at 418; *Strickland*, 466 U.S. at 689 (citing *Michel*, 350 U.S. at 101). Further, Attorney Erickson's work "as a whole" does not constitute deficient performance. Even if Attorney Erickson did wrongly assess and advise Petitioner as to his likely sentence—which the Court finds palpably incredible—his representation overall was not deficient. Attorney Erickson was appointed as Petitioner's fourth attorney, after the deadline for pre-trial motions had *long* passed and there was an active deadline for plea negotiations in order for Petitioner to receive acceptance of responsibility credit. ECF No. 10-3 at 3; *see supra* Section 2. Attorney Erickson met with Petitioner no less than five times over the course of just over a month, discussing a wide variety of issues including discovery, the search warrant and potential motions, evidentiary issues, and the plea agreement negotiations. ECF No. 10-3 at 3. As the Government points out, Attorney Erickson successfully negotiated a plea agreement under which

Case 2:24-cv-01033-JPS    Filed 08/29/25    Page 18 of 24    Document 12

the Government agreed to drop three of the five counts for which Petitioner was indicted, which moved his sentence from a 30-year mandatory minimum to a 10-year mandatory minimum. ECF No. 10 at 23–24 (citing CR-ECF No. 21 (Petitioner's criminal indictment) and CR-ECF No. 175 (Petitioner's plea agreement)). Attorney Erickson avers that he tried to get a better deal for Petitioner and that what he received was "the best [deal] available." ECF No. 10-3 at 5. Petitioner had the opportunity to rebut any of these facts in his reply, but he did not. The Court cannot say that Attorney Erickson's representation was deficient at the plea negotiation stage.

Petitioner claims he would not have pled guilty if he had known that his sentence might be longer than ten years or longer than Newman's. ECF No. 1 at 7. But Petitioner voluntarily entered into the plea agreement which expressly provided that Petitioner faced *at least* ten years imprisonment, but that he could be sentenced above or below the guidelines range of 190 to 212 months based on the Court's discretion. CR-ECF No. 175 at 2, 4–5, 7. Accordingly, Petitioner's claim also fails on the prejudice prong, because even if the Court could find that Attorney Erickson's performance was deficient, Petitioner had an independent source of information that made it clear that his ultimate total sentence would be anywhere between ten years and life imprisonment. *See id.* at 2. There is therefore no reasonable probability here that "but for counsel's errors, [Petitioner] would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59; *Lafler*, 566 U.S. at 163 (citing *Missouri v. Frye*, 566 U.S. 134, 148 (2012)).

### 4.1.3 Attorney Erickson's Criminal History Score Advocacy

Petitioner also moves for relief on the grounds that Attorney Erickson's advocacy at sentencing was deficient because he "never objected

to [Petitioner's] criminal history level being a level 6 (the highest level) even though [he had] never served one day of jail time and had [two] felony convictions."[4] ECF No. 1 at 7. Because the record demonstrates the falsity of this allegation, this ground fails.

At the sentencing stage, counsel "must make a significant effort, based on reasonable investigation and logical argument, to mitigate his client's punishment." *Eddmonds*, 93 F.3d at 1319 (quoting *Gramley*, 74 F.3d at 135 and *Kubat v. Thieret*, 867 F.2d 351, 369 (7th Cir. 1989)) (internal quotation marks omitted). "[C]ounsel may not treat the sentencing phase as nothing more than a mere postscript to the trial." *Kubat*, 867 F.2d at 369. The record makes clear that Attorney Erickson met this standard. Specific to Petitioner's allegation about his criminal history score, Attorney Erickson's sentencing memorandum clearly addresses Petitioner's criminal history and argued that it is "over-inflated," providing the relevant background and arguing that Petitioner's "record is largely one of misdemeanors with little violence or gun activity" and that Petitioner had "never been to prison." CR-ECF No. 185 at 5–6. Ultimately, the record

---

[4] As noted earlier, Petitioner also claims that Attorney Erickson was deficient because he told Petitioner that he could pursue a motion to reduce his sentence after sentencing instead of an appeal. *Id.* at 7. Attorney Erickson's unrebutted affidavit provides that he did, in fact, pursue reducing Petitioner's sentence after the fact but that he ultimately did not has sufficient grounds to do so. *See* ECF No. 10-3 at 4. Accordingly, and because Petitioner has not offered any alternate version of events, the Court finds no prejudice in this claim and therefore Petitioner is not entitled to habeas relief.

The Court also notes that, to the extent Petitioner claims that he was prejudiced by a misunderstanding that prevented him from appealing his sentence or conviction, the Court granted him leave to clarify the scope of such claims in an amended motion and he failed to timely do so. *See* ECF No. 2 at 7; ECF No. 3. He has therefore forfeited any such claim.

Case 2:24-cv-01033-JPS    Filed 08/29/25    Page 20 of 24    Document 12

demonstrates that Attorney Erickson's representation seems to have been reasonable at the sentencing stage, therefore Petitioner is not entitled to any relief for this claim.

### 4.2    *Garland v. Cargill*

Petitioner also argues that *Garland v. Cargill*, 602 U.S. 406 (2024), which, in his words, holds that "attachments on firearms [do] not turn semiautomatic firearms into fully automatic," applies to him and his § 924(c) conviction under Count Nine. ECF No. 1 at 8 (citing *id.*). It is unclear why Petitioner thinks this case applies to his sentence because he was not convicted of any charge involving a machinegun or automatic weapon. He was indicted of knowingly possessing a machinegun in furtherance of drug trafficking crimes, *see* CR-ECF No. 1 at 10 (citing 18 U.S.C. § 924(c)(1)(A)(i) and 924(c)(1)(B)(ii), the latter of which is the machinegun provision), but ultimately he pled guilty to the lesser offense of knowingly possessing a *firearm* in furtherance of drug trafficking crimes, *see* CR-ECF No. 175 at 2 (citing 18 U.S.C. § 924(c)(1)(A)(i)). This changed his mandatory minimum sentence for this charge from 30 years to 5 years. *Compare* 18 U.S.C. § 924(c)(1)(A)(i) *with* 18 U.S.C. § 924(c)(1)(B)(ii). Petitioner was not convicted or sentenced under any machinegun-related statute or guideline. This argument is accordingly without merit.[5] *See* ECF No. 10 at 24–25 (explaining that "[w]hether or not any of [the firearms in the indictment] are machineguns is irrelevant to Petitioner's conviction in Count Nine for violating 18 U.S.C. § 924(c)(1)(A)(i)").

---

[5]Petitioner also asks that the Court appoint counsel related to interpreting whether *Garland v. Cargill* applies to his case, ECF No. 1 at 8, but because the Court has found that it conclusively does not, the Court will deny this relief.

5.  **CONCLUSION**

For the reasons stated above, the Court finds each of Petitioner's claims to be without merit, and his motion to vacate his sentence must be denied.

Under Rule 11(a) of the Rules Governing Section 2255 Cases, "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." To obtain a certificate of appealability under 28 U.S.C. § 2253(c)(2), Petitioner must make a "substantial showing of the denial of a constitutional right" by establishing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). In light of the well-settled principles governing the disposition of Petitioner's claims, as outlined above, the Court cannot fairly conclude that reasonable jurists would debate whether his motion should be decided differently; as a consequence, the Court must deny him a certificate of appealability.

Accordingly,

**IT IS ORDERED** that Petitioner Andrell Wesley's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, ECF No. 1, be and the same is hereby **DENIED** both insofar as it requests relief under § 2255 and insofar as it moves the Court to appoint counsel related to one of Petitioner's stated grounds for relief;

**IT IS FURTHER ORDERED** that the Government's motion to extend time and for a finding of waiver of attorney-client privilege, ECF No. 8, be and the same is hereby **GRANTED in part** and **DENIED in part;**

the motion is **GRANTED** to the extent that it seeks a finding that Petitioner Andrell Wesley waived his attorney-client privilege with respect to Attorney Thomas Erickson's representation in the underlying criminal case; the motion is **DENIED as moot** to the extent it seeks an extension of time to respond to Petitioner's brief in support of his motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255;

IT IS FURTHER ORDERED that this action be and the same is hereby **DISMISSED with prejudice**; and

IT IS FURTHER ORDERED that a certificate of appealability be and the same is hereby **DENIED**.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 29th day of August, 2025.

BY THE COURT:

_____

J.P. Stadtmueller
U.S. District Judge

This Order and the judgment to follow are final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **thirty (30)** days of the entry of judgment. See Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). Moreover, under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **twenty-eight (28)** days of the entry of judgment. The Court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The Court cannot extend this deadline. *See id.* A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.